## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**MONIQUE MYERS on behalf
of F.W., a minor,**

       **Plaintiff,**

                              **Case No. 2:17-cv-13530**

     **v.**                          **Magistrate Judge Norah McCann King**

**ANDREW SAUL,
Commissioner of Social Security,**

       **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Monique Myers on behalf of F.W., her minor stepson, for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying Plaintiff's application.[1] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Commissioner's decision.

## I.    PROCEDURAL HISTORY

On August 2, 2013, Plaintiff filed an application for child's SSI benefits, alleging that F.W.[2] has been disabled since October 2, 2001 (his date of birth), because of heart problems. R.

---

[1] Andrew Saul, the current Commissioner of Social Security, is substituted as Defendant in his official capacity.

[2] For purposes of clarity, and consistent with the terminology used at the administrative hearing, the Court will refer to Monique Myers as "Plaintiff" and to F.W. as "Claimant."

87, 95, 216–21. The application was denied initially and upon reconsideration. R. 106–10, 114–16. Administrative Law Judge ("ALJ") Beth Shillin held administrative hearings on November 19, 2015, and April 12, 2016, at which Claimant and Plaintiff, who were represented by counsel, appeared and testified. R. 35–85. In a decision dated September 20, 2016, the ALJ concluded that Claimant has not been disabled within the meaning of the Social Security Act since August 2, 2013, the date on which the application was filed. R. 17–31. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on November 2, 2017. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On August 28, 2018, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 12.[3] On March 11, 2020, the case was reassigned to the undersigned. ECF No. 29. The matter is now ripe for disposition.

## II.   LEGAL STANDARD

### A.      Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

(1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309 , 2018 WL 1509091, at \*4 (D.N.J. Mar. 27, 2018).  Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at \*4.

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at \*4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at \*3 (D.N.J. Aug. 9, 2016).  The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight."  *K.K.*, 2018 WL 1509091, at \*4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists

only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter*, 650 F.2d at 482. Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to

4

scrutinize the record as a whole to determine whether the conclusions reached are
rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, a court can

enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or

without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the

record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or

contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210,

221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a

complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the

record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see*

*A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award

benefits should be made only when the administrative record of the case has been fully

developed and when substantial evidence on the record as a whole indicates that the claimant is

disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation

omitted); *see A.B.*, 166 F. Supp.3d at 518. In assessing whether the record is fully developed to

support an award of benefits, courts take a more liberal approach when the claimant has already

faced long processing delays. *See, e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An

award is "especially appropriate when "further administrative proceedings would simply prolong

[Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223;

*see Schonewolf*, 972 F. Supp. at 290.

## B.   Sequential Evaluation Process

The Social Security Act establishes a three-step sequential evaluation process for

determining whether a child is disabled within the meaning of the statute. 20 C.F.R. §

5

416.924(a)−(d). The claimant has the burden of proving disability. 20 C.F.R. § 416.912(a)(1).

At step one, the ALJ determines whether the claimant is currently working and if the work performed constitutes substantial gainful activity. 20 C.F.R. § 416.924(b).  If so, then the inquiry ends because the claimant is not disabled.

At step two, the ALJ determines whether the claimant has a severe medically determinable impairment. 20 C.F.R. § 416.924(c). If the claimant does not have a medically determinable impairment, or if the claimant's impairment is only a slight abnormality or combination of slight abnormalities that causes no more than minimal functional limitations, the inquiry ends because the claimant is not disabled. *Id*. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ determines whether the claimant's impairment or combination of impairments "meet[s]," "medically equal[s]," or "functionally equal[s]" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 416.924(d). If the claimant has an impairment that meets or medically or functionally equals the requirements of a Listing, and that also meets the durational requirement, the claimant will be found to be  disabled. 20 C.F.R. § 416.924(d)(1).

An impairment or combination of impairments medically equals a listing "if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.1526(a). When determining whether an impairment medically equals a listing, an ALJ considers all the evidence in a claimant's record about the claimant's impairment and its effects on the claimant that are relevant to a finding of medical equivalence. 20 C.F.R. § 416.926(c).

If "the [claimant's] impairment does not medically meet a listing . . . the examiner must determine whether the impairment functionally equals a listing." *Jaramillo v. Comm'r of Soc. Sec.*, 130 F. App'x 557, 560 (3d Cir. 2005). A court determines whether a claimant's impairment

6

"functionally equals" a Listing by evaluating the following six domains of functioning: "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well-being." 20 C.F.R. § 416.926a(b)(1). To functionally equal a Listing, the claimant's impairment must result in a "marked" limitation in two domains of functioning or in an "extreme" limitation in one domain of functioning. 20 C.F.R. § 416.926a(a). A "marked" limitation in a domain occurs when the claimant's impairment interferes seriously with the claimant's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(i).  A "marked" limitation also means a limitation that is "more than moderate" but "less than extreme." *Id*. A "marked" limitation is the equivalent of the functioning expected to be found on standardized testing with scores that are at least two, but less than three, standard deviations below the mean. *Id*. An "extreme" limitation in a domain occurs when the claimant's impairment interferes very seriously with the claimant's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3)(i). An "extreme" limitation also means a limitation that is "more than marked" and is the rating given to the worst limitations. *Id*. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. *Id*. It is the equivalent of the functioning expected to be found on standardized testing with scores that are at least three standard deviations below the mean. *Id*.

Finally, an ALJ uses a "whole child" approach when determining whether a claimant's impairment is functionally equivalent to a Listing. SSR 09-1p. Under this approach, the ALJ begins the evaluation process "by considering the child's functioning without considering the domains or individual impairments." *Id*. After identifying "which of a child's activities are limited," the ALJ then determines "which domains are involved in those activities" and "whether

7

the child's impairment(s) could affect those domains and account for the limitations." *Id*. An impairment "may have effects in more than one domain" and the ALJ must evaluate limitations caused by an impairment "in any affected domain(s)." *Id*. (quoting 20 C.F.R. § 416.926a(c)). Finally, the ALJ "rate[s] the severity of the limitations in each affected domain." *Id*. "This technique for determining functional equivalence accounts for all of the effects of a child's impairments singly and in combination—the interactive and cumulative effects of the impairments—because it starts with a consideration of actual functioning in all settings." *Id*.

## III.    ALJ DECISION AND APPELLATE ISSUES

The Claimant was a newborn on his alleged disability onset date, October 2, 2001, a school-age child on August 2, 2013, the date on which the application was filed, and an adolescent at the time the ALJ rendered her decision. R. 20, 216.  At step one, the ALJ found that the Claimant had not engaged in substantial gainful activity since August 2, 2013, his application date. *Id*.

At step two, the ALJ found that the Claimant suffered from the following severe impairments: congenital heart disease; status post Fontan procedure; and attention deficit hyperactivity disorder ("ADHD"). *Id*.

At step three, the ALJ found that the Claimant did not suffer an impairment that met or medically equaled the severity of any Listing. R. 20. The ALJ also found that the Claimant did not have an impairment or combination of impairments that functionally equaled the severity of any Listing. R. 20–30. Specifically, the ALJ found that the Claimant had less than marked limitations in acquiring and using information, in attending and completing tasks, in interacting and relating with others, and in health and physical well-being. R. 24–27, 29–30. The ALJ also found that the Claimant had no limitation in moving about and manipulating

objects and in caring for himself. R. 27−29.

Based on this analysis, the ALJ concluded that the Claimant has not been disabled within the meaning of the Social Security Act since August 2, 2013, the date on which the application was filed. R. 30.

Plaintiff disagrees with the ALJ's findings at step three and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Moving Brief,* ECF No. 27. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 28.

## IV.    DISCUSSION

### A.    Whether the Claimant's Impairments Meet or Medically Equal a Listed Impairment

Plaintiff first argues that the ALJ erred at step three when she concluded that the Claimant's impairments do not meet or medically equal a listed impairment, including Listing 112.11. *Plaintiff's Moving Brief*, ECF No. 27, pp. 13−25. At step three, an ALJ first considers whether the combination of the claimant's medically determinable impairments meets the severity of one of the impairments in the listing of impairments. 20 C.F.R. § 416.924(a). An impairment meets a listed impairment if it satisfies "'*all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.'" *Jones,* 364 F.3d at 504 (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)) (emphasis in original). Moreover, "[a] claimant cannot qualify for benefits under the 'equivalence' step by showing that the *overall* functional impact of his unlisted impairment or

9

combination of impairments is as severe as that of a listed impairment." *Zebley*, at 531 (emphasis added). "[T]he medical criteria defining the listed impairments [are set] at a higher level of severity than the statutory standard" because the "listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Id.* at 532 (emphasis in original) (quoting 20 C.F.R. § 416.925(a)). Although the ALJ is not required to use "particular language" when determining whether a claimant meets a listing, the ALJ's discussion must provide for "meaningful review." *Jones*, 364 F.3d at 505 (citing *Burnett*, 220 F.3d at 120). Accordingly, if the ALJ's decision, "read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that [the claimant] did not meet the requirements for any listing," "[t]his discussion satisfies *Burnett*'s requirement that there be sufficient explanation to provide meaningful review of the step three determination." *Id.*

Listing 112.11, as it existed at the time of the ALJ's decision, addressed ADHD as a condition "[m]anifested by developmentally inappropriate degrees of inattention, impulsiveness, and hyperactivity." 20 C.F.R. pt. 404, subpt. P, app.1, § 112.11 (2016). A claimant meets the required level of severity when the requirements in both paragraphs A and B are satisfied:

A. Medically documented findings of all three of the following:

1. Marked inattention; and
2. Marked impulsiveness; and
3. Marked hyperactivity;

AND

B. For older infants and toddlers (age 1 to attainment of age 3), resulting in at least one of the appropriate age-group criteria in paragraph B1 of 112.02; or, for children (age 3 to attainment of age 18), resulting in at least two of the appropriate age-group criteria in paragraph B2 of 112.02.

*Id.* The criteria in paragraph B2 of 112.02 at the relevant time were as follows:

a. Marked impairment in age-appropriate cognitive/communicative function, documented by medical findings (including consideration of historical and other information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized psychological tests, or for children under age 6, by appropriate tests of language and communication; or

b. Marked impairment in age-appropriate social functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized tests; or

c. Marked impairment in age-appropriate personal functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, appropriate standardized tests; or

d. Marked difficulties in maintaining concentration, persistence, or pace.

20 C.F.R. pt. 404, subpt. P, app.1, § 112.02B2 (2016).

Here, as previously discussed, at step two of the sequential evaluation the ALJ found that Claimant had the following severe impairments: congenital heart disease, status post Fontan procedure,[4] and ADHD. R. 20. At step three, the ALJ determined that Claimant did not have an impairment or combination of impairments that meets or medically equals the severity of any listed impairment, reasoning as follows:

No treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show signs or findings that are the same or equivalent to those of any listed impairment. Particular scrutiny was given to the claimant's condition in light of Listing Sections 104.00; 112.00. Laboratory testing indicates only mild heart abnormalities not at listing level

---

[4] "A Fontan procedure involves the 'functional correction of tricuspid atresia by anastomosis of, or insertion of a nonvalved prosthesis between, the right atrium and the pulmonary artery with closure of the interatrial communication.'" *Gilmore v. Comm'r of Soc. Sec.*, No. 09 CIV. 6241, 2011 WL 609886, at *2 (S.D.N.Y. Jan. 28, 2011) (citations omitted), *report and recommendation adopted*, No. 09 CIV. 6241RMBFM, 2011 WL 611826 (S.D.N.Y. Feb. 18, 2011).

severity; the claimant's caridologist [sic] has determined the claimant's condition is stable and that he is able to engage in any level of physical activity without restriction. He has some behavioral problems but receives fair grades, with some math and science difficulties. He has been held back twice but is in regular education with allowance for extra time to complete work.

*Id*. Plaintiff complains that this medical equivalence finding at step three is conclusory and fails to identify a specific listing. *Plaintiff's Moving Brief*, ECF No. 27, pp. 17−25. Plaintiff goes on to argue that the ALJ's decision fails to address the elements of Listing 112.11, which "are clearly and unambiguously satisfied in the evidence of record[,]" fails to address the criteria for any childhood cardiovascular Listings, and fails to compare any Listings. *Id*.

Plaintiff's arguments are not well taken. As a preliminary matter, Plaintiff cites to the wrong version of the regulations for Listing 112.11's criteria. *See id*. at 19−20.[5] Defendant correctly points out that the applicable version is the one in place at the time the ALJ issued her decision on September 20, 2016, which contains the criteria detailed above, rather than the different criteria cited by Plaintiff. *Compare id. with Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 28, pp. 13−14; *see also* 81 Fed. Reg. 66138-1 (Sept. 26, 2016) (containing the

---

[5] Plaintiff contends that paragraph A of Listing 112.11 requires "'medical documentation of the requirements of paragraph 1, 2, or 3":

> 1. *One* or both of the following:
> a. <u>Frequent distractibility, difficulty sustaining attention, and difficulty organizing tasks</u>; or
> b. Hyperactive and impulse behavior (for example, difficulty remaining seated, talking excessively, difficulty waiting, appearing restless, or behaving as if being "driven by a motor").
> 2. <u>Significant difficulties learning and using academic skills</u>; or
> 3. Recurrent motor movement or vocalization.

*Id.* at 19 (emphasis in original). Plaintiff goes on to contend that the paragraph B criteria of Listing 112.11 requires an extreme limitation in one, or two marked limitation in two, of the following areas of mental functioning: "1. Understand, remember, or apply information (see 112.00E1). 2. Interact with others (see 112.00E2). 3. Concentrate, persist, or maintain pace (see 112.00E3). 4. Adapt or manage oneself (see 112.00E4)." *Id*. at 19−20.

criteria cited by Plaintiff and stating that "[t]hese rules are effective January 17, 2017. . . . We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions."). Plaintiff's argument that Claimant meets the requirements of Listing 112.11 therefore rests on the wrong criteria for that Listing.

In addition, the ALJ's failure to expressly refer to Listing 112.11 is not fatal to her decision "as long as the ALJ's review of the record permits meaningful review of the step-three conclusions." *See Lopez v. Comm'r of Soc. Sec.*, 270 F. App'x 119, 121 (3d Cir. 2008) (citations omitted); *see also Rivera v. Comm'r of Soc. Sec.*, 164 F. App'x 260, 262–63 (3d Cir. 2006) (rejecting argument that the ALJ was required to identify which listings he used in his decision, stating that "he ALJ is not required to use any specific format or language in his analysis, as long as he sufficiently develops the record to permit meaningful judicial review[,]" and finding that "the ALJ did state what listings he used for comparison" by citing to Listing 1.00, which "is not merely an introductory treatise"); *Jones*, 364 F.3d at 503–05 (finding that, even though the ALJ did not expressly refer to any specific Listing, the ALJ's analysis satisfied step three because the decision indicated that the ALJ considered the appropriate factors). Here, although the ALJ did not explicitly refer to the criteria of Listing 112.11 at the step three medical equivalence analysis, "the ALJ's decision, read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that [the Claimant] did not meet the requirements for any listing, including" Listing 112.11. *See Jones*, 364 F.3d at 505; *see also Lopez*, 270 F. App'x at 122 (finding that the "ALJ's failure to discuss specific Listings is not reversible error . . . because the ALJ analyzed all the probative evidence and explained his Decision sufficiently to permit meaningful review"); *Rivera*, 164 F. App'x at 262–63; *Saich o/b/o N.E.S. v. Comm'r of Soc. Sec.*, No. CV 16-3346, 2017 WL 3718109, at *5 (D.N.J. Aug. 29, 2017) (finding medical

13

equivalence analysis sufficient to allow for meaningful review because, although "brief, elsewhere in the decision (and particularly in his functional-equivalence analysis)[,]" the ALJ discussed the relevant medical and educational records and testimony). In considering whether Claimant suffers from an impairment or combination of impairments that functionally equals the severity of the Listings, the ALJ engaged in a comprehensive review of the medical evidence relevant to Listing 112.11, detailing years of medical records, school records, and hearing testimony. R. 21–27, 29. Although Plaintiff cites to some arguably favorable evidence, the ALJ's recitation of the evidence provides substantial support for her decision. For example, at step three in the functional equivalence analysis, the ALJ went on to specifically consider additional evidence as follows: in 2008 and/or 2009, Claimant was keeping up in school without difficulty, R. 22; Claimant's father reported that, at school, Claimant was aggressive, was not doing his work, and would not pay attention but that, at home, he had no behavioral problems, R. 23; clinical examination findings showed that Claimant was respectful and easy to engage in the evaluation, and that his mental status examination was normal with the exception of little or no insight, *id.*; Claimant attended only one therapy session, *id.*; at an April 2015 psychiatric evaluation, when Claimant was in fifth grade and was thirteen years old, Plaintiff reported that Claimant experienced behavioral problems at school, evidenced by a suspension for running through hallways and knocking on doors, and that Claimant was hyperactive and had difficulty focusing and concentrating; but she also reported that, since January 2015, Claimant had shown some improvement, was very friendly and got along with most other children and with his siblings and father, *id.*; the psychiatric examiner in April 2015 concluded that Plaintiff appeared to be a reasonably intelligent adolescent who, with treatment, could improve significantly, *id.*; at that examination, Claimant's mood was neutral, his affect was full and appropriate, and his

14

memory was intact, *id.*; this examiner diagnosed ADHD, ruled out learning disorder in math, ruled out oppositional defiant disorder, ruled out adjustment disorder with disturbances in emotions and conduct but noted that Claimant's intelligence was average to low average, *id.*; Claimant was promoted to seventh grade, *id.*; a November 2015 report card revealed that Plaintiff was not doing well in math and science but was doing mid-C work and even B- work in band and Spanish, *id.*; there was no indication that Claimant was referred to a special education evaluation, R. 25; that, although treatment and anger management classes were offered in January 2014, Claimant was brought to only one session, R. 23−24; and Claimant is able to dress and bathe independently, and to let his needs be known, R. 29. Reading the record as a whole, this evidence permits meaningful judicial review and unquestionably contains substantial evidence to support the ALJ's determination that Plaintiff's impairments did not meet or medically equal Listing 112.11. *See* 20 C.F.R. pt. 404, subpt. P, app.1, §§ 112.11 (providing that the paragraph A criteria requires *medically documented* findings of marked inattention, impulsiveness, and hyperactivity), 112.02B2 (providing that the paragraph B criteria require marked impairments in age-appropriate cognitive/communicative functioning, or social functioning, or personal functioning, or marked difficulties in maintaining concentration, persistence, or pace); *see also Lopez*, 270 F. App'x at 122; *Rivera*, 164 F. App'x at 262−63; *Jones*, 364 F.3d at 505; *Saich o/b/o N.E.S.*, 2017 WL 3718109, at *5.

Although Plaintiff insists that Claimant meets Listing 112.11, Plaintiff does not cite to specific evidence in the record to support this assertion; in any event, as discussed above, Plaintiff has relied on the wrong version of the Listing. *See Plaintiff's Moving Brief*, ECF No. 27, pp. 19−22, 25. The Court will not hunt through the record to find evidence to support Plaintiff's argument. *See Atkins v. Comm'r Soc. Sec.*, No. 19-2031, 2020 WL 1970531, at *4 (3d Cir. Apr.

24, 2020) ("'[J]udges are not like pigs, hunting for truffles buried in the record.'") (quoting *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n.8 (3d Cir. 2006)) (internal citation omitted)); *see also United States v. Claxton*, 766 F.3d 280, 307 (3d Cir. 2014) ("[T]his Court has frequently instructed parties that they bear the responsibility to comb the record and point the Court to the facts that support their arguments.").

Plaintiff also argues that the ALJ erred because she did not identify which childhood cardiovascular listings she considered in her medical equivalence analysis at step three, instead referring generally to Section 104.00. *Plaintiff's Moving Brief*, ECF No. 27, pp. 22−24. However, as set forth above, the ALJ's failure to identify a specific listing under 104.00 is not fatal so long as there is sufficient analysis to permit meaningful judicial review. *See Lopez*, 270 F. App'x at 122; *Rivera*, 164 F. App'x at 262−63; *Jones*, 364 F.3d at 505; *Saich o/b/o N.E.S.*, 2017 WL 3718109, at *5. Here, the ALJ concluded that Claimant did not meet or medically equal a specific listing under Section 104.00 (cardiovascular system) because no treating or examining physician has mentioned findings equivalent in severity to the criteria; that the evidence did not show signs or findings that are the same or equivalent to a listing under Section 104.00; that laboratory testing indicates only mild heart abnormalities not at listing level severity; and that Claimant's cardiologist determined that his condition is stable and that he is able to engage in all levels of physical activity without restriction. R. 20. This analysis provides substantial evidence in support of the ALJ's conclusion that Claimant does not meet or medically equal a listing under Section 104.00.

Plaintiff nevertheless argues that other portions of the record undermine this determination. *Plaintiff's Moving Brief*, ECF No. 27, pp. 22−23. This argument is not well taken. As a preliminary matter, Plaintiff provides no citation to the record to support some of his

16

recitation of the medical evidence. *See id*. at 23; *see also Atkins*, 2020 WL 1970531, at *4;

*Claxton*, 766 F.3d at 307. Moreover, although Plaintiff refers to Claimant's echocardiogram

results from 2013, 2014, and 2015, as well as to the fact that Claimant had undergone six (6)

cardiac surgeries prior to 2005, Plaintiff does not explain how this evidence satisfies any listing

under Section 104.00. *See Plaintiff's Moving Brief*, ECF No. 27, p. 23. The Court will not

construct Plaintiff's arguments for her. *See Padgett v. Comm'r of Soc. Sec*., No. CV 16-9441,

2018 WL 1399307, at *2 (D.N.J. Mar. 20, 2018) ("[B]ecause Plaintiff has articulated no analysis

of the evidence, the Court does not understand what argument Plaintiff has made here. Plaintiff

has done no more than thrown down a few pieces of an unknown jigsaw puzzle and left it to the

Court to put them together. The Court does not assemble arguments for a party from

fragments."). As the Commissioner points out, *Defendant's Brief Pursuant to Local Civil Rule*

*9.1,* ECF No. 28, pp. 19–20, Plaintiff has not explained how any specific evidence shows that

Claimant meets the Listings for, *inter alia*, chronic heart failure, 20 C.F.R. pt. 404, subpt. P,

app.1, § 104.02 (2016); recurrent arrhythmias, *id*. at § 104.05; congenital heart disease, *id*. at §

104.06;[6] heart transplant, *id*. at § 104.09; or rheumatic heart disease, *id*. at § 104.13. *See Zebley*,

493 U.S. at 531.

---

[6] At the time of the ALJ's decision, qualifying congenital heart disease under Listing 104.06
must have been accompanied by one of the following:

    A. Cyanotic heart disease, with persistent, chronic hypoxemia as manifested by:

    1. Hematocrit of 55 percent or greater on two evaluations 3 months or more apart
    within a consecutive 12–month period (see 104.00A3e); or
    2. Arterial O2 saturation of less than 90 percent in room air, or resting arterial PO2
    of 60 Torr or less; or
    3. Hypercyanotic spells, syncope, characteristic squatting, or other incapacitating
    symptoms directly related to documented cyanotic heart disease; or
    4. Exercise intolerance with increased hypoxemia on exertion.

Plaintiff also argues that the ALJ erred when she failed to consider a state agency reviewing physician's opinion that Claimant had a "marked" limitation in his health and well being and which "earns only a curious rejection at the end of the decision[.]" *Plaintiff's Moving Brief*, ECF No. 27, p. 23 (citing R. 90–91). Plaintiff's argument is not well taken.

It is true that the state agency reviewing physician rated Claimant's limitation in the domain of health and physical well-being as "marked." R. 90. However, in support of that rating, the state agency reviewing physician provided the following explanation:

> 11 yr old male who has hx of congenital heart defects. Last ECHO done on 05 / 29 / 13 shows - double outlet right ventricle, D-transposition of the great arteries, subpulmonary VSD- unrestrictive, unrestrictive ASD S/P bilateral bidirectional Glenn anastomosis and extrahepatic Fontan placement. Mildly hypoplastic and hypertrophic right ventricle with adequate systolic function. Mildly dilated left ventricle and mild aortic insufficiency.

───────────────

> OR

> B. Secondary pulmonary vascular obstructive disease with pulmonary arterial systolic pressure elevated to at least 70 percent of the systemic arterial systolic pressure.

> OR

> C. Symptomatic acyanotic heart disease, with ventricular dysfunction interfering very seriously with the ability to independently initiate, sustain, or complete activities.

> OR

> D. For infants under 12 months of age at the time of filing, with life-threatening congenital heart impairment that will require or already has required surgical treatment in the first year of life, and the impairment is expected to be disabling (because of residual impairment following surgery, or the recovery time required, or both) until the attainment of at least 1 year of age, consider the infant to be under disability until the attainment of at least age 1; thereafter, evaluate impairment severity with reference to the appropriate listing.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 104.06 (2016).

R. 90−91. The ALJ assigned only "partial weight" to this rating, reasoning as follows:

> The assessment of the state agency medical reviewers is afforded partial weight. The determination of marked limitations in physical health and well being is found inconsistent with the claimant's stable heart condition, fairly good grades, lack of symptoms and apparent lack of any follow-up for potential psychiatric treatment (Exhibits 2A and 4A).

R. 30. Although the ALJ did not address the state agency reviewing physician's opinion at step three of her medical equivalence analysis, the ALJ did specifically address this opinion and clearly explained why she accorded only "partial weight" to that opinion, referring to years of medical records detailed in the decision. *See id*. As previously discussed, an ALJ need not use specific language or format so long as the decision, when read as a whole, provides for meaningful judicial review, which it does here. *See Lopez*, 270 F. App'x at 122; *Rivera*, 164 F. App'x at 262−63; *Jones*, 364 F.3d at 505; *Saich o/b/o N.E.S.*, 2017 WL 3718109, at *5. In any event, neither of the state agency reviewing physicians concluded that Claimant met or medically equaled a listing. R. 90, 102.

Finally, Plaintiff argues that the ALJ failed to consider Claimant's impairments in combination. *Plaintiff's Moving Brief*, ECF No. 27, pp. 14−16, 24. This Court disagrees. The ALJ expressly stated that Claimant "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]" R. 20. As detailed above, the ALJ then went on to discuss years of medical records and testimony. *See* R. 21−30. Reading the decision as a whole, substantial evidence supports the ALJ's decision that Claimant's impairments or combination of impairments did not meet or medically equal a listed impairment. *See Jones*, 364 F.3d at 505; *see also Torres v. Berryhill*, No. CV 16-2441, 2019 WL 4014416, at *4 (E.D. Pa. Aug. 23, 2019) (affirming denial of benefits where the ALJ stated that the plaintiff did not have an impairment or combination of impairments that met or medically

equaled a listed impairment and cited to medical evidence and testimony); *Saich o/b/o N.E.S.*, 2017 WL 3718109, at *4 ("ALJ Miller is not required to compare each of N.E.S''s limitations to any specific Listing criteria as long as his decision properly considered the relevant evidence and explained his reasoning. . . . ALJ Miller properly considered the relevant medical evidence and provided sufficient analysis to support his conclusion that N.E.S.'s impairments did not meet the requirements of the Listings.") (citations omitted); *Polanco v. Colvin*, No. CV 15-04322, 2016 WL 4408821, at *4 (D.N.J. Aug. 16, 2016) ("In light of the ALJ's thorough discussion of the record throughout her opinion, the Court finds that the ALJ adequately considered the combined effect of the Child's impairments. . . . [T]he Court notes that Plaintiff has not 'point [ed] to any medical evidence ignored by the ALJ that would show that [Plaintiff's] impairments medically equaled one of the listings.' . . . Therefore, the Court concludes that the ALJ properly considered the combined effect of Plaintiff's impairments at step three.") (citations omitted).

In short, the ALJ's thorough review of the evidence, which was relevant to Listing 112.11 and the listings under 104.00, constitutes substantial evidence supporting the ALJ's decision at step three that Claimant neither met nor medically equaled any Listing and permits meaningful review of that decision by this Court. *See Jones*, 364 F.3d at 505; *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (stating that courts "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied") (citations omitted);  *Klangwald v. Comm'r of Soc. Sec.*, 269 F. App'x 202, 204 (3d Cir. 2008) ("After broadly concluding that [the claimant] 'has no impairment, which meets the criteria of any of the listed impairments,' the ALJ followed this conclusion with a searching review of the medical evidence. Under our precedents, this is sufficient.").

20

**B.      Whether the Claimant's Impairment Functionally Equals a Listed Impairment**

Plaintiff next argues that the ALJ erred in concluding that the Claimant's impairment or combination of impairments does not functionally equal a listed impairment. *Plaintiff's Moving Brief*, ECF No. 27, pp. 25–33. Plaintiff specifically contends that the ALJ should have found "marked" or "extreme" limitations in the domains of attending and completing tasks, interacting and relating with others, and health and physical well-being. *Id.* As previously discussed, before a child's impairment can be regarded as the functional equivalent of a listed impairment, it must be established that the child has a marked limitation in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). Because the ALJ found that the Claimant had no marked or extreme limitations, R. 20–30, Plaintiff must show that the Claimant had a marked limitation in two domains or an extreme limitation in one domain. For the reasons that follow, Plaintiff has not made this showing.

**1.      Attending and completing tasks**

The domain of attending and completing tasks assesses how well a child is able to focus and maintain his attention and also assesses how well the child begins, carries through, and finishes activities, including the pace at which the child performs activities and the ease with which the child changes them. 20 C.F.R. § 416.926a(h) (2016). As noted by the ALJ,

> Social Security rules provide that a school-age child without an impairment should be able to focus his attention in a variety of situations in order to follow directions, remember and organize school materials, and complete classroom and homework assignments. The child should be able to concentrate on details and not make careless mistakes in his work (beyond what would be expected in other children of the same age who do not have impairments). The child should be able to change activities or routines without distraction, and stay on task and in place when appropriate. The child should be able to sustain attention well enough to participate in group sports, read by himself, and complete family chores. The child should also be able to complete a transition task (e.g., be ready for the school bus, change

21

clothes after gym, change classrooms) without extra reminders and accommodation (20 CFR 416.926a(h)(2)(iv) and SSR 09-4p).

Social Security rules provide that an adolescent without an impairment should be able to pay attention to increasingly longer presentations and discussions, maintain his concentration while reading textbooks, and independently plan and complete long-range academic projects. The child should also be able to organize his materials and to plan his time in order to complete school tasks and assignments. In anticipation of entering the workplace, the child should be able to maintain attention on a task for extended periods of time, and not be unduly distracted by peers or unduly distracting to them in a school or work setting (20 CFR 416.926a(h)(2)(v) and SSR 09-4p).

R. 25. The ALJ went on to find that Claimant had a less than marked limitation in this domain, reasoning as follows:

The claimant has some difficulty with attention and has been diagnosed with ADHD. However, as noted, he is doing fairly well in most subjects in regular education with only additional time for test taking. His problems at school are due to behavior and failing to complete his work rather than to cognitive issues.

R. 26. Plaintiff argues that Claimant has "more than demonstrated a 'marked' if not an 'extreme' limitation" in this domain, challenging the ALJ's statement that Claimant has "cognitive issues" precisely because he has behavioral issues and fails to complete his work. *Plaintiff's Moving Brief*, ECF No. 27, pp. 27–28.

Plaintiff's argument is not well taken. In finding that Claimant had a less than marked limitation in this domain, the ALJ noted that, notwithstanding Claimant's attention difficulties, ADHD diagnosis, and behavioral issues, he was doing fairly well in most subjects and was not in special education classes. R. 26. This finding is consistent with and supported by the ALJ's earlier consideration of Plaintiff's acknowledgment that although Claimant had experienced behavioral problems, had been in trouble at school, was hyperactive, and had had difficulty focusing and concentrating, Claimant had shown some improvement in these areas since January 2015. R. 23; *see also Jones*, 364 F.3d at 505. Plaintiff also takes issue with the ALJ's

characterization of Claimant's school problems as behavioral and arising from his failure to complete work rather than as a cognitive issue. Although the ALJ might have phrased this finding differently, a fair reading of this analysis and the decision as a whole reflects that the ALJ reasonably considered that Claimant did not have any cognitive deficiency that impaired his behavior, *see* R. 23 (considering that the examining psychiatrist noted that Claimant appeared "reasonably intelligent" with average to low average intelligence), that Claimant's behavior and performance at school was negatively impacted by friends who got into trouble and that Claimant's behavior improved when he spent less time with them, that Claimant did not have behavioral issues at home or during examinations, and that the examining psychiatrist opined that Claimant could "improve significantly if treated." R. 23. The ALJ also noted the failure to attend more than one therapy or anger management session. R. 23–24. Finally, the ALJ specifically considered the opinions of the state agency reviewers, who found that Claimant had no limitation in most domains and a less than marked limitation in the domain of attending and completing tasks, *see* R. 30, 90, 101, discounting only these doctors' opinion that Claimant had a marked limitation in the domain of physical health and well being. R. 30. The Court concludes that substantial evidence supports the ALJ's analysis and conclusion that the Claimant had less than marked impairments in the domain of attending and completing tasks. 20 C.F.R. § 416.926a(h); *cf. L.B. on behalf of S.B. v. Comm'r of Soc. Sec.*, No. CV 19-885, 2020 WL 603991, at *9 (D.N.J. Feb. 5, 2020) (finding that substantial evidence supported the ALJ's conclusion the claimant had a less than marked limitation in attending and completing tasks where, *inter alia*, despite the claimant's difficulties within this domain, the evidence documented her recent progress in school); *Stoner o/b/o Z.S. v. Berryhill*, No. 3:16-CV-02108, 2018 WL 1528767, at *6 (M.D. Pa. Feb. 13, 2018), *report and recommendation adopted*, No. 3:16-CV-

2108, 2018 WL 1518571 (M.D. Pa. Mar. 28, 2018) (concluding that substantial evidence supported the ALJ's determination that the child had a less than marked limitation in attending and completing tasks where, *inter alia*, the child "did not suffer from poor frustration tolerance either at home or at the time of [the doctor's] personal observation of the child" and where "the child was neither on medication nor in treatment for" ADHD or oppositional defiant disorder); *Ayala o/b/o E.A. v. Comm'r of Soc. Sec.*, No. CV 14-7359, 2015 WL 13229498, at *6 (D.N.J. Dec. 18, 2015) ("Thus, despite the brevity of the ALJ's discussion of relevant evidence in the sections containing the ALJ's functional equivalence findings, the opinion as a whole indicates that the relevant portions of the reports cited in Plaintiff's brief were properly considered.") (citing *Jones*, 364 F.3d at 505).

### 2. Interacting and relating with others

The domain of interacting and relating with others assesses how well a child initiates and sustains emotional connections with others, develops and uses the language of his community, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others. 20 C.F.R. § 416.926a(i) (2016). As noted by the ALJ,

> Social Security rules provide that a school-age child without an impairment should be developing more lasting friendships with children who are of the same age. The child should begin to understand how to work in groups to create projects and solve problems. The child should have an increasing ability to understand another's point of view and to tolerate differences (e.g., playing with children from diverse backgrounds). The child should attach to adults other than parents (e.g., teachers or club leaders), and may want to please them to gain attention. The child should be well able to talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand (20 CFR 416.926a(i)(2)(iv) and SSR 09-5p).
>
> Social Security rules provide that an adolescent without an impairment should be able to initiate and develop friendships with children of the same age and to relate appropriately to other children and adults, both individually and in groups. The child should focus less attention on parents and more on relationships with peers, and develop an increasing desire for privacy. The child should be increasingly able

> to solve conflicts with peers, family members or adults outside of the family. The child should also recognize that there are different social rules for dealing with his friends and acquaintances than with adults (e.g., behaving casually with friends but more formally with people in authority). The child should be able to intelligibly express his feelings, ask for assistance, seek information, describe events, and tell stories, in all kinds of environments (e.g., home, classroom, sports, extra-curricular activities, or part-time job), and with all types of people (e.g., parents, siblings, friends, classmates, teachers, employers, and strangers) (20 CFR 416.926a(i)(2)(v) and SSR 09-5p).

R. 26−27. The ALJ found that Claimant had a less than marked limitation in this domain, reasoning as follows:

> The claimant engages in acting out at school and has had some suspensions. However, both examiners and his parents noted that he was a friendly adolescent and easily engaged. He gets along with his peers, his siblings and his parents. He does not have behavioral problems at home. His stepmother told the psychiatric examiner that he had improved since January 2015, when he had stopped hanging out so often with troublemakers at school (Exhibit 8F).

R. 27. This analysis reflects the ALJ's careful consideration of the medical records as well as the testimony in determining that the Claimant had a less than marked limitation in interacting and relating with others. *See Cortes ex rel. J.C. v. Comm'r of Soc. Sec.*, No. 2:11-CV-5819, 2013 WL 795599, at *5 (D.N.J. Mar. 4, 2013) (finding substantial evidence supported the ALJ's determination that the child had a less than marked limitation in the domain of interacting and relating with others where the ALJ credited the opinions of the state agency consultants that the child had a less than marked limitation in this domain; the ALJ credited the child's mother's statement in a psychiatric evaluation that the child's behavior improved with medication; and the child's mother claimed in a function report that the child had friends his own age and gets along with his teacher and other adults).

Plaintiff, however, challenges this finding by the ALJ, complaining that the ALJ was inconsistent and erred when she relied on evidence from only 2015. *Plaintiff's Moving Brief*, ECF No. 27, pp. 29−31. Plaintiff's arguments are not well taken.

First, the ALJ's reliance on Plaintiff's statements to the examining psychiatrist, R. 23, but later finding little adjudicative value to her statements in the Function Report, R. 30, are not inconsistent. As detailed above, the ALJ explained that she reasonably discounted the statements in the Function Report because the statements are inconsistent with the record and because they offer little or no explanation of the limitations referred to in the report. *See* R. 30, 222−231 (reflecting little to no explanation of alleged limitations in the Function Reports), 349−54 (same).

Second, viewing the decision as a whole, *see Jones*, 364 F.3d at 505, the ALJ specifically considered pre-2015 evidence, including Claimant's 2014 psychological assessments at Trinitas Medical Center, which included statements by Claimant's father. R. 23, 319−48. Moreover, as previously noted, the ALJ specifically considered the reviewing state agency opinions from 2013 and 2014, which found, *inter alia*, that Claimant had no limitation in most domains and less than a marked limitation in the domain of attending and completing tasks, *see* R. 30, 90, 101, discounting only those doctors' finding that Claimant had a marked limitation in the domain of physical health and well being. R. 30. Accordingly, the record simply does not support Plaintiff's assertion that the ALJ improperly failed to address evidence dated prior to 2015 when she found that Claimant had a less than marked impairment in this domain.

In short, the Court concludes that the ALJ's analysis and determination that the Claimant had a less than marked impairment in the domain of interacting and relating with others enjoys substantial support in the record. *See* 20 C.F.R. § 416.926a(i).

### 3.      Health and physical well-being

The domain of health and physical well-being considers "the cumulative physical effects of physical or mental impairments and their associated treatments or therapies on [the child's]

26

functioning" that was not considered in the domain of moving about and manipulating objects.

20 C.F.R. § 416.926a(l) (2016). As noted by the ALJ,

> [u]nlike the other five domains of functional equivalence, which address a child's abilities, this domain does not address typical development and functioning. The "Health and Physical Well-Being" domain addresses how recurrent illness, the side effects of medication, and the need for ongoing treatment affect the child's health and sense of physical well-being (20 CFR 416.929a(l) and SSR 09-8p).

> Social Security regulation 20 CFR 416.926a(l)(3) and SSR 09-8p set forth some examples of limited functioning in this domain that children of any age might have; however, the examples do not necessarily describe marked or extreme limitation in the domain. Some examples of difficulty children could have involving their health and physical well-being are: (i) generalized symptoms, such as weakness, dizziness, agitation (e.g., excitability), lethargy (e.g., fatigue or loss of energy or stamina), or psychomotor retardation because of any impairment(s); (ii) somatic complaints related to an impairment (e.g., seizure or convulsive activity, headaches, incontinence, recurrent infections, allergies, changes in weight or eating habits, stomach discomfort, nausea, headaches or insomnia); (iii) limitations in physical functioning because of need for frequent treatment or therapy (e.g., chemotherapy, multiple surgeries, chelation, pulmonary cleansing, or nebulizer treatments); (iv) periodic exacerbations from an impairment(s) that interfere with physical functioning (e.g., pain crises from sickle cell anemia); or (v) medical fragility requiring intensive medical care to maintain level of health and physical well-being.

R. 29−30. The ALJ found that Claimant had a less than marked limitation in this domain,

reasoning as follows:

> The claimant's heart condition has been stable for years with medication management. He requires yearly follow-ups only and has been released for any level of physical activity (Exhibit 4F). At the October 2013 evaluation, he had pain after gym and recess but no lightheadedness, blurred vision or palpitations. He denied any fainting, diarrhea or tachycardia. He has not required any heart intervention since 2005. Testing showed no evidence of ischemia or premature beats in October 2013. His doctor did not feel his chest pain was cardiac in etiology and did not feel he had sport restrictions (Exhibit 4F). I find the doctor's assessment consistent with his exam, the claimant's activities and with the laboratory testing and afford it strong weight.

> Medication and therapy were recommended for ADHD back in April 2015, but there is no indication that this was pursued (Exhibit 7F). The exam was done at the request of the claimant's attorney and it indicates that the claimant's father did not pursue treatment after the ER visit at Trinitas in 2014 either. The psychiatric examiner felt that the claimant would improve with medication and therapy, and

gave him a global assessment of functioning score of 59-61[,] indicating moderate difficulties. I afford strong weight to the assessment as it is consistent with the claimant's school functioning and behavior.

The Function Reports completed by the claimant's father and step mother are inconsistent with the record and give minimal to no explanation of the multiple limitations noted (Exhibits 1E and 4E). As such, they are of little adjudicative value. The assessment of the state agency medical reviewers is afforded partial weight. The determination of marked limitations in physical health and well being is found inconsistent with the claimant's stable heart condition, fairly good grades, lack of symptoms and apparent lack of any follow-up for potential psychiatric treatment (Exhibits 2A and 4A).

R. 30. The Court finds no error with the ALJ's assessment in this regard. As previously noted, the ALJ carefully considered the medical record and explained why she found the statements in the Function Reports regarding greater limitations to be of little adjudicative value. The ALJ also sufficiently explained why she discounted the opinion of the state agency reviewing physicians that the Claimant had marked limitations in the domain of health and physical well-being. Moreover, even if the ALJ had credited these opinions, a finding of a marked limitation in this single domain would still be insufficient to warrant reversal; Plaintiff must show that Claimant has an extreme limitation in one domain or a marked limitation in two domains of functioning in order to qualify for benefits. *See* 20 C.F.R. § 416.926a(a).

Plaintiff nevertheless challenges the ALJ's determination that Claimant had only a less than marked limitation in this domain, contending that the ALJ relied on only positive medical data and omitted evidence that she argues supports a finding of a marked limitation in this domain. *Plaintiff's Moving Brief*, ECF No. 27, pp. 31–33. This argument is unavailing because, as noted above, Plaintiff must show that Claimant has an extreme limitation in this domain because, as this Court has already found, substantial evidence supports the ALJ's findings of less than marked limitations in the remaining domains of functioning. *See* 20 C.F.R. § 416.926a(a). In any event and despite evidence in the record that Plaintiff believes supports her argument,

courts "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson*, 497 F. App'x at 201. This Court concludes that substantial evidence supports the ALJ's analysis and conclusion that the Claimant had less than marked impairments in the domain of health and physical well-being. *See* 20 C.F.R. § 416.926a(l).

## V.    CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  October 13, 2020                                    _____*s/Norah McCann King*_____
                                                          NORAH McCANN KING
                                                          UNITED STATES MAGISTRATE JUDGE